**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **AWAISULLAH QADRI, individually, and on behalf of all others similarly situated,** | § | |
| ***Plaintiff*** | § | |
| **v.** | § | **No. ____________________** |
| **CONIFER REVENUE CYCLE SOLUTIONS, LLC, d/b/a CONIFER HEALTH SOLUTIONS, CONIFER HEALTH SOLUTIONS, LLC, and TENET HEALTHCARE CORPORATION,** | § | **DEMAND FOR JURY TRIAL** |
| ***Defendants*** | § | |

**PLAINTIFF'S CLASS ACTION COMPLAINT**

Awaisullah Qadri ("Plaintiff") brings this action against Defendant Conifer Revenue Cycle Solutions, LLC, d/b/a Conifer Health Solutions ("Defendant" or "Conifer"), Conifer Health Solutions, LLC, and Tenet Healthcare Corporation (together, "Co-Defendants"), individually and on behalf of all others similarly situated, and alleges, upon personal knowledge as to his own actions and his counsel's investigation, and upon information and belief as to all other matters, as follows:

**INTRODUCTION**

1. Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the protected health information ("PHI") and personally identifiable information ("PII") (together, "Private Information") of Plaintiff and other similarly situated patients and customers of Defendant's clients, including potentially tens of thousands of individuals ("Class Members").

2. On or around August 28, 2025, unauthorized threat actors targeted and gained

access to Defendant Conifer's internal email systems through two of its employees' Microsoft Office 365-hosted business accounts ("the Data Breach").

3. Conifer provides administrative and financial services for health plans and healthcare providers, among others, across the country.

4. Thus, by infiltrating Conifer employee email accounts, cybercriminals were able to access a treasure trove of transaction data, including both the medical and financial Private Information of Plaintiff and Class Members.

5. Indeed, according to Defendant, the Private Information that may have been compromised as a result of the Data Breach includes: (1) identifying and contact information (such as name, date of birth, and/or address); (2) health insurance information (insurer name, subscriber name, policy and group numbers, and billing and claims information); and/or (3) patient medical information (medical record number, patient account number, provider name, date(s) of service, and diagnosis and treatment information).

6. Companies in the healthcare sector, like Defendant, know, or should know, that they are prime targets for cybercriminals and identity thieves due to the significant amount of Private Information they store in their systems and because of their storage of medical information electronically.

7. Indeed, Defendant was, or should have been, keenly aware of the risk of a cybersecurity incident because its employee email accounts were previously targeted by successful hackers a mere three years ago.[1] In a similar incident, cybercriminals were able to compromise a

[1] *See* Steve Alder, *Lawsuit Filed Against Conifer & Tenet Healthcare Over Email Account Breach*, THE HIPAA J. (Apr. 18, 2023), available at http://hipaajournal.com/lawsuit-filed-against-conifer-tenet-healthcare-over-email-account-breach/.

Microsoft Office-365 hosted email account within Defendant's digital infrastructure.[2] Nonetheless, Defendant allowed its information systems to remain vulnerable to attack.

8. Failing to implement reasonable cybersecurity measures has significant consequences for the patients whose records are inherently leaked to cybercriminals and identity thieves, as they are the ones who target and steal this information in data breaches.

9. Defendant's failure to implement reasonable cybersecurity measures has and will continue to cause significant harm to Plaintiff and the proposed Class Members for years to come. As is recommended by experts, these victims will have to spend significant time, energy, and money fending off identity theft and fraud for many years to come, and likely for the rest of their lives.

10. Upon information and belief, Plaintiff's and Class Members' names, dates of birth, medical information and healthcare details are in the hands of cybercriminals as a result of the Data Breach.

11. Moreover, given the inclusion of health and medical information, as well as highly sensitive PII, the Data Breach represents a significant invasion of privacy in that Plaintiff's and Class Members' Private Information has been disclosed to the exact individuals from whom reasonable cybersecurity measures are intended to protect them—cybercriminals and identity thieves.

**PARTIES**

12. Plaintiff Awaisullah Qadri is a resident of Memphis, Tennessee, where he intends to remain.

13. Defendant Conifer Revenue Cycle Solutions, LLC, d/b/a Conifer Health Solutions, is a California limited liability company with its principal place of business in Texas,

---

[2] *Id*.

headquartered at 14201 Dallas Parkway, Dallas, Texas 75254, and may be served with process through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201. The sole member-manager of Conifer Revenue Cycle Solutions, LLC, is its parent company and co-defendant, Conifer Health Solutions, LLC.

14. Co-Defendant Conifer Health Solutions, LLC, is a Delaware limited liability company with its principal place of business in Texas, headquartered at 14201 Dallas Parkway, Dallas, Texas 75254, and may be served with process through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

15. Co-Defendant Tenet Healthcare Corporation, the parent company of Conifer Health Solutions, LLC, is a Nevada corporation with its principal place of business in Texas, headquartered at 14201 Dallas Parkway, Dallas, Texas 75254, and may be served with process through its registered agent, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

16. At all times relevant hereto, Defendant Conifer Revenue Cycle Solutions, LLC, was controlled entirely by Co-Defendant Conifer Health Solutions, LLC, which was, in turn, controlled entirely by Co-Defendant Tenet Healthcare Corporation.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). There are at least 100 putative Class Members, the aggregated claims of the individual Class Members exceed the sum or value of $5,000,000 exclusive of interest and costs, and members of the proposed Class, including Plaintiff, are citizens of states different from Defendant and Co-Defendants.

18. This Court has personal jurisdiction over each Defendant and Co-Defendant

because each maintains its principal place of business, and each is at home, in the State of Texas.

19. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b)(1) because each Defendant and Co-Defendant resides in this district and all Defendants and Co-Defendants are residents of the State of Texas. Further, each Defendant and Co-Defendant maintains its principal place of business in the Dallas Division of this district.

20. Venue is also proper in this district, pursuant to 28 U.S.C. § 1391(b)(2) because all or a substantial portion of the events or omissions giving rise to this lawsuit occurred in this district. each Defendant and Co-Defendant resides in this district and all Defendants and Co-Defendants are residents of the State of Texas.

## ADDITIONAL FACTUAL ALLEGATIONS

21. The information held by Defendant in its computer systems at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

22. Defendant made promises and representations to Plaintiff and Class Members that their Private Information would be kept safe and confidential, and that the privacy of that information would be maintained.

23. Plaintiff's and Class Members' Private Information was provided to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

24. Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties.

25. Defendant had obligations created by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTCA" or "FTC Act"), HIPAA, TITEPA, industry standards, and implicit and explicit representations made to Plaintiff and Class Members, through Defendant's clients, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

26. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew, or should have known, it was responsible for protecting Plaintiff's and Class Members' Private Information from unauthorized disclosure.

**Defendant's Data Breach Was Eminently Foreseeable**

27. Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches targeting institutions that collect and store Private Information, like Defendant, preceding the date of the Data Breach.

28. Data thieves regularly target institutions like Defendant due to the highly sensitive information in their custody. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

29. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[3]

30. As a custodian of Private Information, Defendant knew, or should have known, the importance of safeguarding the Private Information entrusted to it by Plaintiff and Class Members, and of the foreseeable consequences if its data security systems were breached, including the significant costs imposed on Plaintiff and Class Members because of a breach.

31. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

---

[3] *See* Identity Theft Res. Ctr., *2021 Data Breach Annual Report*, at 6 (Jan. 2022), https://notified.idtheftcenter.org/s.

32. Defendant was, or should have been, fully aware of the unique type and the significant volume of data in its systems, amounting to likely tens of thousands of individuals' detailed Private Information, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

33. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

34. The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

**Value of Personally Identifiable Information and Protected Health Information**

35. The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[4] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[5]

36. The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials.[6]

[4] 17 C.F.R. § 248.201 (2013).
[5] *Id.*
[6] Anita George, *Your Personal Data Is for Sale on The Dark Web. Here's How Much It Costs,*

37. The information compromised in the Data Breach is even more significant because it includes health and medical information, which is extraordinarily sensitive and private and is commonly used to perpetrate medical and insurance fraud.

38. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information . . . [is] worth more than 10x on the black market."[7]

39. In addition, medical and health information can be worth as much as ten times more valuable than PII.[8]

40. "Healthcare records are known to be one of the most valuable types of information that hackers look for. Most of the PHI that is compromised throughout the industry happens through hacking or IT incidents. That is because of the high value of PHI compared to other information that hackers may be able to find."[9]

41. "Another reason that medical records are extremely valuable to hackers is that there are many ways to use that data on the dark web. This information can be used to purchase prescriptions, receive treatment or make fake medical claims."[10]

42. The fraudulent activity resulting from the Data Breach may not come to light for

---

DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs. (last visited January 14, 2026).

[7] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html. (last visited January 14, 2026).

[8] *Why Medical Records are 10 Times More Valuable Than Credit Card Info*, CYBERPOLICY, https://www.cyberpolicy.com/cybersecurity-education/why-medical-records-are-10-times-more-valuable-than-credit-card-info (last visited January 14, 2026).

[9] *Why Is PHI Valuable to Hackers* (Jan. 25, 2022), https://www.accountablehq.com/post/why-is-phi-valuable-to-hackers. (last visited January 14, 2026).

[10] *Id.*

years. There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[11]

**Defendant Failed to Comply with FTC Guidelines**

43. The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the FTCA, 15 U.S.C. § 45. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

44. In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal consumer information they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted

---

[11] *Report to Congressional Requesters*, GAO, at 29 (June 2007), https://www.gao.gov/assets/gao-07-737.pdf. (last visited January 14, 2026).

from the system, and have a response plan ready in the event of a breach.

45. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

46. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

47. As evidenced by the Data Breach, Defendant failed to properly implement basic data security practices and failed to audit, monitor, or ensure the integrity of its data security practices, or to appropriately prepare to face a data breach and respond to it in a timely manner. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act.

48. Defendant was at all times fully aware of its obligation to protect the PII of consumers under the FTC Act, and yet failed to comply with such obligations. Defendant was also always well-aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**Defendant Failed to Comply with HIPAA**

49. Defendant is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

50. Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH"). *See* 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

51. HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information.

52. HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

53. HIPAA requires "comply[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

54. "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

55. HIPAA's Security Rule requires defendants to do the following:

- Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives,

maintains, or transmits;

- Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;
- Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and
- Ensure compliance by its workforce.

56. HIPAA also requires Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendant is required under HIPAA to "[i]implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

57. HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

58. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400–414, also requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

59. HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the

covered entity or the requirements of 45 C.F.R. Pt. 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

60. HIPAA further requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

61. HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302–164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material. The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.

62. Defendant was at all times fully aware of its HIPAA obligations to protect the PHI of consumers yet failed to comply with such obligations. Defendant was also always aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant's conduct was particularly unreasonable given the nature and amount of PHI it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**Defendant Failed to Comply with Industry Standards.**

63. Experts studying cybersecurity routinely identify institutions that store Private Information like Defendant as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

64. Some industry best practices that should be implemented by institutions dealing with sensitive Private Information, like Defendant, include, but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, implementing reasonable systems to identify malicious activity, implementing reasonable governing policies, and limiting which employees can access sensitive data. As evidenced by the Data Breach and its timeline, Defendant failed to follow some, or all, of these industry best practices.

65. Other best cybersecurity practices that are standard at large institutions which store Private Information include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points.

66. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

67. Defendant failed to comply with these accepted standards, thereby permitting the

Data Breach to occur.

**Defendant Is in Violation of the Texas Identity Theft Enforcement and Protection Act ("TITEPA")**

68. Under TEX. BUS. & COM. CODE § 521.002, the term "Sensitive Personal Information" means:

> (A) an individual's first name or first initial and last name in combination with any one or more of the following items, if the name and the items are not encrypted:
> (i) social security number;
> (ii) driver's license number or government-issued identification number; or
> (iii) account number or credit or debit card number in combination with any required security code, access code, or password that would permit access to an individual's financial account; or
> (B) information that identifies an individual and relates to:
> (i) the physical or mental health or condition of the individual;
> (ii) the provision of health care to the individual; or
> (iii) payment for the provision of health care to the individual.

TEX. BUS. & COM. CODE § 521.002.

69. An entity doing business in Texas must "implement and maintain reasonable procedures, including taking any appropriate corrective action, to protect and safeguard from unlawful use or disclosure any sensitive personal information collected or maintained by the business in the regular course of business." TEX. BUS. & COM. CODE § 521.052. Business Duty to Protect Sensitive Personal Information

70. An entity doing business in Texas must "destroy or arrange for the destruction of customer records containing sensitive personal information within the business's custody or control that are not to be retained by the business." TEX. BUS. & COM. CODE § 521.052. Business Duty to Protect Sensitive Personal Information.

71. In failing to implement and maintain reasonable procedures or take corrective action to safeguard Plaintiff's and the Class Members' confidential Private Information and failing

to properly destroy Plaintiff's and the Class Members' Private Information, Defendant violated the TITEPA.

**Common Injuries & Damages**

72. Because of Defendant's wholly ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class Members has materialized and is imminent, and Plaintiff and Class Members have all sustained actual injuries and damages, including: (a) invasion of privacy; (b) loss of time and loss of productivity incurred mitigating the materialized risk and imminent threat of identity theft risk; (c) the loss of benefit of the bargain (price premium damages); and (d) the continued risk to their Private Information, which remains in the possession of Defendant, and which is subject to further breaches, so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' Private Information.

**The Data Breach Increases Victims' Risk of Identity Theft and Fraud**

73. Plaintiff and Class Members are at a heightened risk of identity theft for years to come, including likely for the rest of their lives, because Defendant's failures resulted in Plaintiff's and Class Members' Private Information falling into the hands of identity thieves.

74. The unencrypted Private Information of Class Members has already or will end up for sale on the dark web, because that is the *modus operandi* of hackers. Indeed, when these criminals do not post the data to the dark web, it is usually at least sold on private Telegram channels to other identity thieves who purchase the Private Information for the express purpose of conducting financial fraud and identity theft operations.

75. Further, the standard operating procedure for cybercriminals is to use some data,

like the Private Information here, to create "fullz packages" of that person to gain access to the full suite of additional PHI that those cybercriminals have access through other means. Using this technique, identity thieves' piece together full pictures of victims' information to perpetrate even more types of attacks.[12]

76. With "Fullz" packages, cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

77. The development of "Fullz" packages means that the stolen Private Information from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

[12] "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more. As a rule of thumb, the more information you have on a victim, the more money that can be made off those credentials. Fullz are usually pricier than standard credit card credentials, commanding up to $100 per record (or more) on the dark web. Fullz can be cashed out (turning credentials into money) in various ways, including performing bank transactions over the phone with the required authentication details in-hand. Even "dead Fullz," which are Fullz credentials associated with credit cards that are no longer valid, can still be used for numerous purposes, including tax refund scams, ordering credit cards on behalf of the victim, or opening a "mule account" (an account that will accept a fraudulent money transfer from a compromised account) without the victim's knowledge. *See*, *e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen from Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecuritv.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm. (last visited January 14, 2026).

**Loss of Time to Mitigate Risk of Identity Theft and Fraud**

78. Because of the recognized risk of identity theft, when a data breach occurs, and once an individual is notified by a company that their Private Information was compromised, as in this Data Breach, a reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm and further injury.

79. The need to spend time mitigating the risk of harm is especially important in cases like this where Plaintiff's and Class Members' Private Information is affected because such information is commonly used to commit medical and insurance fraud.

80. By spending this time, Plaintiff and Class Members are not manufacturing their own harm, but rather are taking necessary steps at Defendant's direction, as the Data Breach included and exposed their Private Information.

81. Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience because of the Data Breach, such as contacting credit bureaus to place freezes on their accounts; changing passwords and re-securing their own computer networks; and checking their financial accounts and health insurance statements for any indication of fraudulent activity, which may take years to detect.

82. These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and

credit record."[13]

83. These efforts are also consistent with the steps that FTC recommends that data breach victims take to protect their personal and financial information after a data breach, including: contacting one of the credit bureaus to place a fraud alert (and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[14]

**The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary**

84. Based on the value of the information stolen, the data either has or will be sold to cybercriminals whose mission it is to perpetrate identity theft and fraud. Even if the data is not posted online, these data are ordinarily sold and transferred through private Telegram channels wherein thousands of cybercriminals participate in a market for such data so that they can misuse it and earn money from financial fraud and identity theft of data breach victims.

85. Such fraud may, and often does, go undetected for years. Consequently, Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future. Moreover, cybercriminals often wait until after the company's credit monitoring offering expires before beginning their fraudulent operations.

86. The retail cost of credit monitoring and identity theft monitoring can cost $200 or more per year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft that arose from the Data Breach. This is a future cost

---

[13] *See* U.S. Gov't Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/new.items/d07737.pdf. (last visited January 14, 2026).

[14] *See* Fed. Trade Comm'n, *Identity Theft.gov*, https://www.identitytheft.gov/Steps. (last visited January 14, 2026).

for a minimum of seven years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their Private Information.

**Plaintiff Qadri's Experience**

87. Plaintiff Qadri provided his Private Information to Defendant as part of receiving medical and healthcare services from a client of Defendant.

88. Thus, at the time of the Data Breach, Defendant retained Plaintiff Qadri's Private Information in its system.

89. Plaintiff received the Notice letter, by U.S. mail, directly from Defendant, which was dated December 18, 2025. According to the Notice Letter, Plaintiff's Private Information was improperly accessed and obtained by unauthorized third parties including: (1) information to identify and contact him (such as name, date of birth, and/or address); (2) health insurance information (insurer name, subscriber name, policy and group numbers, and billing and claims information); and/or (3) patient medical information (medical record number, patient account number, provider name, date(s) of service, and diagnosis and treatment information).

90. Plaintiff is very careful about sharing his sensitive Private Information . Plaintiff stores any documents containing his Private Information in a safe and secure location. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source. Plaintiff would not have entrusted his Private Information to Defendant had he known of Defendant's inadequate data security policies.

91. Given the scope of the Data Breach, Plaintiff's Private Information was affected and compromised as a result of Defendant's failure to properly and effectively prepare for such a highly foreseeable data breach.

92. Plaintiff's Private Information was compromised in the Data Breach and stolen by

notorious cybercriminals who illegally accessed Defendant's network for the specific purpose of targeting Private Information.

93. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach. Plaintiff has spent significant time dealing with the Data Breach—roughly 45 hours of his valuable time that Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

94. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff monitors his Private Information multiple times a week and has already spent many hours dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities.

95. Plaintiff suffered actual injury from having his Private Information compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of his Private Information ; (iii) lost or diminished value of Private Information ; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to his Private Information , which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private

Information .

96. Plaintiff suffered actual injury from the dramatic increase in spam, suggesting that his Private Information has been stolen and is now in the hands of cybercriminals.

97. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed him of key details about the Data Breach's occurrence.

98. As a result of the Data Breach and given Defendant's explicit instructions, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

99. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

100. Plaintiff has a continuing interest in ensuring that his Private Information , which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

101. Plaintiff greatly values his privacy, and would not have provided his Private Information, undertaken the services and paid the amounts that he did if he knew that his Private Information would be maintained using inadequate data security systems

## CLASS ALLEGATIONS

102. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of himself and on behalf of all members of the proposed class defined as:

> All individuals whose Private Information was compromised in the Data Breach ("the Class").

103. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which

Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

104. Plaintiff reserves the right to amend the definition of the proposed Class or to add a subclass before the Court determines whether certification is appropriate.

105. The proposed Class meets the criteria certification under the Federal Rules of Civil Procedure.

106. *Numerosity:* The Class is so numerous that joinder of all Members is impracticable. The number of class members is in the tens of thousands. The identity of these individuals is within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. Defendant has the administrative capability through its computer systems and other records to identify all Class Members, and such specific information is not otherwise available to Plaintiff.

107. *Commonality and Predominance:* There are numerous questions of law and fact common to the Class. As such, there is a well-defined community of interest among the Class Members. These questions predominate over questions that may affect only individual Class Members because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

- Whether Defendant had a contractual duty to protect the Private Information entrusted to it;
- Whether Defendant knew or should have known of the susceptibility of its systems to a data breach;
- Whether Defendant's security measures to protect its systems were reasonable considering best practices recommended by data security experts;

- Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;
- Whether Plaintiff and Class Members were injured and suffered damages or other losses because of Defendant's failure to reasonably protect its systems and data network;
- Whether Plaintiff and Class Members are entitled to relief;
- Whether Defendant failed to adequately notify Class Members of the compromise of their Private Information;
- Whether a contract existing between Plaintiff and the Class Members, and the Defendant, for educational services and data security;
- Whether Defendant breached its contracts with Class Members by failing to properly safeguard their Private Information and by failing to notify them of the Data Breach; and
- Whether Defendant was unjustly enriched.

108. *Typicality:* Plaintiff's claims are typical of the claims of all Class Members, because all such claims arise from the same set of facts regarding Defendant's failures:

- to protect Plaintiff's and Class Members' Private Information;
- to discover and remediate the security breach of its computer systems more quickly; and
- to disclose to Plaintiff and Class Members in a complete and timely manner information concerning the security breach and the theft of their Private Information.

109. *Adequacy:* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is more than an adequate representative of the Class in that Plaintiff is a victim of the Data Breach, and brings the same claims on behalf of himself and the putative Class. Plaintiff has no interests antagonistic to that of the Class Members. Plaintiff has retained counsel who are all competent and experienced in litigating class actions, including class actions following data breaches and unauthorized data disclosures. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

110. *Superiority:* It is impracticable to bring Class Members' individual claims before the Court. Class treatment permits many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

111. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

- The unnamed Class Members are unlikely to have an interest in individually controlling the prosecution of separate actions;
- Concentrating the litigation of the claims in one forum is desirable;
- Plaintiff anticipates no difficulty in the management of this litigation as a class action; and
- Plaintiff's legal counsel has the financial and legal resources to meet the

substantial costs and legal issues associated with this type of litigation.

112. Plaintiff knows of no unique difficulty to be encountered in the prosecution of this action that would preclude its maintenance as a class action.

113. *Issue Certification:* Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such issues include, but are not limited to:

- Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing and safeguarding their Private Information;
- Whether Defendant's security measures to protect its data systems were reasonable considering best practices recommended by data security experts;
- Whether Defendant's failure to institute adequate protective security measures amounted to breach of its contractual obligations;
- Whether Defendant failed to take commercially reasonable steps to safeguard student Private Information; and
- Whether adherence to industry standards, HIPAA Rules and Regulations, and FTC requirements on data security would have reasonably prevented the Data Breach.

114. Finally, all Members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses of those affected by the Data Breach. Using this information, Class Members can be identified and ascertained for the purpose of providing constitutionally sufficient notice.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

115. Plaintiff repeats and re-alleges paragraphs 1-114 of this Complaint and incorporates them by reference herein.

116. Plaintiff and Class Members provided their non-public Private Information to Defendant as part of receiving medical and healthcare services from a client of Defendant.

117. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

118. By assuming the responsibility to collect and store this data, Defendant had duties of care to use reasonable means to secure and to prevent disclosure of the information, and to safeguard the information from theft.

119. Defendant had duties to employ reasonable security measures under Section 5 of the FTCA, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

120. Defendant's duty to use reasonable security measures also arose under the common law, and as informed by the FTC Act and HIPAA, which mandates that Defendant implement reasonable cybersecurity measures.

121. Indeed, both HIPAA and the FTC Act provide clearly defined requirements, as can be seen in Part 164 of HIPAA's implementing regulations and in the various consent decrees from FTC enforcement actions, which have been referred to as a common law of cybersecurity

requirements.

122. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, and the personnel responsible for them, adequately protected the Private Information.

123. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and the Class.

124. Defendant had a duty under the TITEPA to keep confidential Plaintiff's and the Class Members' PII or otherwise notify Plaintiff and the Class Members of their vulnerable network.

125. Defendant's violation of the TITEPA constitutes negligence.

126. Plaintiff and the Class Members are within the class of persons TITEPA was intended to protect and the type of harm that resulted from the Data Breach is the type of harm that the statute intended to guard against.

127. Moreover, Defendant had a duty to promptly and adequately notify Plaintiff and Class Members of the Data Breach.

128. Defendant had and continues to have duties to adequately disclose that the Private Information of Plaintiff and Class Members within Defendant's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice is necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their Private Information by third parties.

129. Defendant breached its duties, pursuant to the FTC Act, HIPAA, TITEPA, and other applicable standards, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

- Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;
- Allowing unauthorized access to Class Members' Private Information;
- Failing to remove Plaintiff's and Class Members' Private Information it was no longer required to retain pursuant to regulations; and
- Failing to implement a reasonable cybersecurity incident response plan that would have enabled Defendant to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so they could take appropriate steps to mitigate the potential for identity theft and other damages.

130. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and Class Members.

131. Defendant has admitted that the Private Information of Plaintiff and Class Members was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

132. But for Defendant's wrongful and negligent breaches of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

133. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm,

or risk of imminent harm, suffered by Plaintiff and Class Members. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

134. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) experiencing an increase in spam calls, texts, and/or emails; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information , which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

135. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

136. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and the Class have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fail to undertake appropriate and adequate measures to protect

the Private Information in its continued possession.

137. Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, declaratory and injunctive relief, and attorneys' fees, costs, and expenses.

**COUNT II**
**BREACH OF IMPLIED CONTRACT AS THIRD-PARTY BENEFICIARY**
**(On Behalf of Plaintiff and the Class)**

138. Plaintiff repeats and re-alleges paragraphs 1-114 of this Complaint and incorporates them by reference herein.

139. Plaintiff and Class Members provided their non-public Private Information to Defendant as part of receiving medical and healthcare services from a client of Defendant.

140. Upon information and belief, Defendant's client then contracted with Defendant to provide related administrative services.

141. In doing so, Defendant established a contract with each of its clients in which, upon information and belief, Defendant took control and possession of Plaintiff's and Class Members' Private Information and at least implicitly promised to safeguard that information.

142. Given the implicit promise to safeguard Plaintiff's and Class Members' Private Information, the contract was made in part to benefit Plaintiff and the Class and with the knowledge that Plaintiff and the Class then relied upon Defendants to safeguard their Private Information.

143. Defendant breached its contract with its client when it failed to use reasonable cybersecurity measures to adequately protect Plaintiff's and Class Members' Private Informationfrom unauthorized access and disclosure.

144. Plaintiff and Class Members were foreseeably harmed by Defendants' failure to use reasonable cybersecurity measures, as alleged herein.

145. If Plaintiff and Class Members knew that Defendant had not reasonably secured their Private Information, they would not have allowed it to be provided to Defendant.

146. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (iv) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) experiencing an increase in spam calls, texts, and/or emails; (vi) statutory damages; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

147. Accordingly, Plaintiff and Class Members are entitled to compensatory, nominal, and consequential damages suffered because of the Data Breach.

**COUNT III**
**MONEY HAD AND RECEIVED**
**(On Behalf of Plaintiff and the Class)**

148. Plaintiff repeats and re-alleges paragraphs 1-114 of this Complaint and incorporates them by reference herein.

149. This claim is pleaded in the alternative to the breach of implied contractual duty claim.

150. Plaintiff and Class Members provided their non-public Private Information to Defendant as part of receiving medical and healthcare services from a client of Defendant.

151. Through Defendant's client, Plaintiff and Class Members conferred a benefit upon Defendant in the form of Private Information provided to Defendant, along with payment, as a condition of receiving medical and healthcare services.

152. Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and Class Members.

153. Because of Defendant's conduct, Plaintiff and Class Members suffered actual damages in an amount equal to the difference in value between the value of services with reasonable data privacy and security practices and procedures, and the services without unreasonable data privacy and security practices and procedures that they received.

154. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiff's and the proposed Class Members' monies paid and their Private Information because Defendant failed to adequately protect their Private Information. Plaintiff and the Class Members would not have provided their Private Information, nor paid Defendant, had they known Defendant would not adequately protect their Private Information.

155. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class Members all unlawful or inequitable proceeds received by it because of their misconduct and the Data Breach alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiff, on behalf of himself and all Class Members, requests judgment against Defendant and that the Court grant the following:

A. An Order certifying this action as a class action and appointing Plaintiff and his counsel to represent the Class;

B. Equitable relief enjoining Defendant from engaging in the wrongful conduct

complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

C. Injunctive relief requested by Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

iii. requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

v. prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vi. requiring Defendant to engage independent third-party security

auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures; requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

ix. requiring Defendant to conduct regular database scanning and securing checks;

x. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xi. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs

and what to do in response to a breach;

xii. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

xiii. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xiv. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xv. for a period of 7 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D. For an award of actual damages, compensatory damages, and nominal damages, in an amount to be determined, and for punitive damages, as allowable by law;

E. For an award of attorneys' fees and costs, and any other expenses, including expert witness fees, pursuant to the common fund doctrine and FED. R. CIV. P. 23;

F. Pre- and post-judgment interest on any amounts awarded; and

G. Such other and further relief as this court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: January 14, 2026

Respectfully submitted,

/s/ Andrew Shamis
Andrew Shamis
Leanna A. Loginov*
**SHAMIS & GENTILE, P.A.**
2626 Cole Avenue, Suite 300
Dallas, TX 75204
Tel: (305) 479-2299
Email: lloginov@shamisgentile.com

Grayson Wells*
John C. Roberts*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gwells@stranchlaw.com
jroberts@stranchlaw.com

* *Pro hac vice forthcoming*

***Counsel for Plaintiff and the Proposed Class***